FILED
2021 JAN 29 PM 3:01
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JENIFER BOX,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Court #4:20-cv-00018-PK<br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION<br><br>Magistrate Judge Paul Kohler |

　　　　This Social Security disability appeal is before the Court pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court will affirm the Commissioner's final decision denying Ms. Box's application for disability insurance benefits (DIB) under Title II of the Social Security Act. Judgment shall enter in favor of Defendant and against Plaintiff.

## BACKGROUND

**A.　　Summary of relevant evidence before the ALJ**

　　　　Ms. Box was 43 years old in June 2016, when she claimed she became disabled due to impairments in her neck, lower back, right shoulder, and knees (Tr. 163, 191). She had past relevant work as an office manager (a sedentary, skilled occupation) and purchase agent (a light, skilled occupation) (Tr. 24, 192, 211). *See* 20 C.F.R. §§ 404.1567 (explaining exertional levels), 404.1568 (explaining skill levels).

　　　　In 2016, a right shoulder MRI showed a small tear of Ms. Box's superior labrum, but no rotator cuff tear (Tr. 325). Studies of her knees showed bilateral medial meniscus tears (Tr. 326,

328). After Ms. Box went to an emergency room in April 2016 for low back pain, an MRI of her lower back (lumbar spine) showed mild narrowing of the central canal and some impingement on a nerve root (Tr. 334-58, 359-60). At several subsequent ER visits related to a headache, Ms. Box displayed normal strength, normal gait, and no spinal tenderness (Tr. 362, 368).

In mid-2016, pain management specialist Dr. Devinder Kumar observed some tenderness, muscle spasm, and reduced range of motion in Ms. Box's low back and neck (Tr. 399, 397). A neck MRI showed degenerative disc disease with mild to moderate narrowing of the central canal and the nerve root openings (Tr. 332-33). A neurologist, Dr. Parham Yashar, ordered an updated low back MRI, which showed mild narrowing of the central canal and no narrowing of the nerve root openings (Tr. 384, 380-81). Dr. Yashar then performed a low back surgery in October 2016 (Tr. 404-16). Ms. Box's primary care physician, Dr. Dewey Pillai, allowed her to return to work "on [a] limited basis" later that same month (Tr. 449).

Shortly thereafter, Ms. Box moved to Utah and began seeing Dr. Nathan Nielson as her primary care provider (Tr. 462). She reported significant pain, but Dr. Nielson was concerned that she might be exaggerating her symptoms (*see* Tr. 463 ("Patient acts like the muscle is weak however I do not feel she is actually trying to contract[] based on the intermittent contraction. Neurologically the reflexes are normal as well as sensation. When distracted the patient moves her arm just fine.")).

Ms. Box began receiving pain management treatment from Dr. Bryt Christensen in late 2016 (Tr. 575). Dr. Christensen observed some limited right arm strength but otherwise normal strength, a normal spine, normal gait, normal reflexes, and normal sensation (Tr. 579-80). He provided injections for Ms. Box's neck and hip pain (Tr. 570-72, 560-62). Ms. Box reported that

treatment moderately controlled her pain (Tr. 564, 556, 545). In March 2017, Dr. Christensen opined in a form opinion that Ms. Box was under a permanent disability that would not allow her to return to her regular work (Tr. 550-51).

In April 2017, Ms. Box described her daily activities to the agency as part of her disability application (Tr. 203-10). She reported difficulty completing tasks and following instructions but denied any difficulty with memory, concentration, or understanding (Tr. 208). In June, she reported similar abilities but said she had no difficulty completing tasks or following instructions (Tr. 234). She said she did logic puzzles and finished what she started (Tr. 233-34).

State agency medical and psychological consultants reviewed the record in 2017 to evaluate Ms. Box's abilities and limitations. *See* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation."). In May, Dr. Gregory Stevens opined that Ms. Box had physical abilities consistent with a range of light work (Tr. 55-57). *See id.* § 404.1567(b) (defining light work). That same month, Dr. Stacy Koutrakos concluded that Ms. Box had not established that she had a medically determinable mental impairment (Tr. 53-54). *See id.* § 404.1521 (explaining medically determinable impairments). In July, Dr. Lewis Barton independently reviewed the record and opined that Ms. Box had physical abilities consistent with a range of light work (Tr. 71-73), and Dr. John Gill concluded that Ms. Box had a medically determinable mental impairment, but it resulted in no more than mild impairment in her ability to concentrate, persist, and maintain pace and was not "severe" (Tr. 68-70). *See id.* § 404.1522(a) (impairment is non-severe if it does not significantly limit the ability to do basic work activities).

Throughout the remainder of 2017, 2018, and 2019, Ms. Box consistently told Dr. Christensen that her pain remained moderately controlled and she was meeting her goals in terms of her activities of daily living and other activities (Tr. 746, 740, 736, 731, 725, 719, 714, 708, 697, 691, 685, 676, 670). She would rarely report that her medications caused fatigue, constipation, or dry mouth (*see* Tr. 746, 740, 731, 676), but she most often denied all adverse medication side effects (*see* Tr. 736, 725, 719, 714, 708, 697, 691, 685, 670). Dr. Christensen very often observed a normal gait and normal thought processes (*see* Tr. 748, 742, 738, 733, 727, 721, 716, 710, 693, 687; *but see* Tr. 699 (limping gait), 678 (limping gait and cane use), 672 (slow and cautious gait with cane use)). He also observed a normal lower back and full strength on two occasions (*see* Tr. 721, 719).

Ms. Box was hospitalized for several days in March 2018 with suicidal thoughts and anxiety (Tr. 622-43). Providers observed she had intact recent and remote memory, grossly intact attention, and normal strength and muscle tone (Tr. 623). After this hospitalization, Ms. Box saw therapist Clint Dalley every few weeks through June 2018. At these visits, Ms. Box displayed good attention and concentration, intact memory, and logical and organized thought processes (*see* Tr. 609, 595, 597, 599, 601, 603).

Ms. Box returned to her primary care physician Dr. Nielson in November 2018 (Tr. 647). He observed some abnormalities in Ms. Box's right arm (Tr. 647). Outside of these findings, Ms. Box walked with a slight limp but without an assistive device, had normal range of motion elsewhere, and displayed full strength in her upper extremities (Tr. 647). Dr. Nielson opined that Plaintiff could lift less than 10 pounds, sit 20 minutes at a time, stand 15 minutes at a time, walk 10 minutes at a time, and bend no more than four times per day (Tr. 648).

### B.     The ALJ's decision

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 18-25).  *See* 20 C.F.R. § 404.1520(a)(4) (outlining the process).  As relevant here, the ALJ found at step two that Ms. Box had physical impairments that qualified as "severe" under the agency's regulations, but that her mental impairments were not severe (Tr. 18-20).  Between steps three and four, the ALJ assessed Ms. Box's residual functional capacity (RFC), finding that she could do "sedentary work . . . except that she is able to:  perform frequent handling and fingering; occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; and occasionally perform overhead reaching bilaterally.  Further, she is unable to climb ladders, ropes or scaffolds and is unable to crawl" (Tr. 21).  *See id*. §§ 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."), 404.1567(a) (defining sedentary work).  At step four, the ALJ found that this RFC would allow Ms. Box to do her past relevant work as an office manager (Tr. 24-25; *see* Tr. 44-45 (vocational expert testimony)).  The ALJ thus concluded that Ms. Box was not disabled under the Act (Tr. 25).

## II.     STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close."  *Id.* at 1154, 1157. The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding—itself a deferential standard.  *Dickinson v. Zurko*, 527 U.S. 150, 152-53

(1999).[1] Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). It is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). If the evidence is susceptible to multiple interpretations, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). A court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

### III.   THE PARTIES' ARGUMENTS

Ms. Box argues that the ALJ did not sufficiently articulate his reasons for discounting the opinions of Drs. Christensen and Nielson (ECF No. 19, Plaintiff's Opening Brief (Pl. Br.) 7-13) and did not sufficiently consider her mental impairments, including how those impairments affected her ability to do her past relevant work (Pl. Br. 14-15). In response, the Commissioner argues that the ALJ reasonably weighed the medical opinions (ECF No. 21, Defendant's Answer Brief (Def. Br.) 10-18), reasonably evaluated Ms. Box's mental limitations (Def. Br. 18-20), and

---

[1] "[T]o be clearly erroneous, a decision must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). The substantial evidence standard is even more deferential. *Dickinson*, 527 U.S. at 153.

reasonably found that Ms. Box could do her past relevant work (Def. Br. 20-22). Though well articulated, the Court finds Ms. Box's challenges unpersuasive.

A.   **The ALJ reasonably found that Ms. Box was limited to a restricted range of sedentary work, the least-demanding level of work**

Between steps three and four, an ALJ assesses a claimant's RFC, which is the most she can do despite her impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 404.1546(c). The claimant bears the burden of showing that limitations should be included in her RFC assessment. *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51153-01, 51155 (Aug. 26, 2003) (comments to final rule); *Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004). Here, the ALJ found that Ms. Box had established that she had the RFC to perform a restricted range of sedentary work—the least-demanding level of work, *see* 20 C.F.R. § 404.1567(a)—but did not establish greater limitations (Tr. 21-24). In reaching this conclusion, the ALJ reasonably evaluated the medical opinions and Ms. Box's mental abilities and limitations.

   1.   **The ALJ reasonably weighed the medical opinions**

The ALJ was required to consider every medical opinion when assessing whether Ms. Box was disabled. *See* 20 C.F.R. § 404.1527[2]; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7. There were four disparate opinions relevant to her abilities:

- Treating pain management physician Dr. Christensen opined that she was permanently disabled (Tr. 550-51);

---

[2] The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules). Ms. Box protectively filed her claim on March 17, 2017 (*see* Tr. 16). Thus the Court's review of the ALJ's consideration of the medical opinions is under 20 C.F.R. § 404.1527.

- Reviewing physician Dr. Stevens opined that she had abilities consistent with a range of light work, with several postural and manipulative limitations (Tr. 55-57);

- Reviewing physician Dr. Barton opined that she had abilities consistent with a range of light work, with several postural and manipulative limitations (Tr. 71-73); and

- Treating primary care physician Dr. Nielson opined that she could lift no more than 10 pounds, sit no more than 20 minutes, stand no more than 15 minutes, walk no more than 10 minutes, and bend no more than four times per day (Tr. 648).

The ALJ was tasked with resolving the conflicts between these opinions. *See* 20 C.F.R. § 404.1527; *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

The ALJ ultimately gave great weight to the opinions of Drs. Stevens and Barton and little weight to the opinions of Drs. Christensen and Nielson (Tr. 23-24). The ALJ then assessed an RFC for sedentary work with manipulative, postural, and reaching limitations (Tr. 21). This RFC was between, on the one hand, the extremely limiting opinions of Drs. Christensen and Nielson and, on the other hand, the opinions of Drs. Stevens and Barton that Ms. Box could do a range of light work (*compare* Tr. 21 *with* Tr. 550-51, 55-57, 71-73, 648). "Faced with the conflicting opinions, the administrative law judge adopted a middle ground. . . . In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one," an approach that has repeatedly been upheld by the Tenth Circuit. *Smith*, 821 F.3d at 1268 (citing *Chapo*, 682 F.3d at 1288).

Because Drs. Christensen and Nielson were treating physicians, their opinions could have been entitled to controlling weight, but only if they were well-supported by medically acceptable

clinical and laboratory diagnostic techniques and were not inconsistent with the other substantial evidence in Ms. Box's case record. 20 C.F.R. § 404.1527(c)(2). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation and citation omitted).

The ALJ gave little weight to the opinions of Drs. Christensen and Nielson for five reasons: (1) the opinions were unexplained, (2) the providers had not shown knowledge of Social Security's rules for evaluating disability, (3) some of the doctors' statements infringed on issues reserved to the Commissioner, (4) the opinions did not evidence consideration of Ms. Box's entire medical record, and (5) the opinions were inconsistent with medical evidence, including imaging of Ms. Box's spine and extremities (Tr. 23-24).[3] The reasons given by the ALJ for the weight he gave the medical opinions were both legally sound and supported by more than the scintilla of evidence necessary to survive this Court's highly deferential review. *See Biestek*, 139 S. Ct. at 1154.

---

[3] The ALJ did not, contrary to Ms. Box's argument, "use[] the incorrect standard in evaluating this case" by applying the new medical opinion regulation applicable to disability applications filed after March 27, 2017 (Pl. Br. 9). First, the ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527," the regulation applicable to this case based on Ms. Box's protective filing date (Tr. 21). *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." (internal citation and quotation marks omitted)). Moreover, the ALJ weighed the opinions, which is not done under the new regulation (Tr. 23-24). *See* 20 C.F.R. § 404.1520c(a) (explaining that, in applications filed after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . .").

One of the criteria relevant to the weight due a medical opinion is how good of an explanation the source provides for their opinion. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ reasonably found that neither Dr. Christensen nor Dr. Nielson provided a thorough explanation for their extremely limiting opinions (Tr. 23; *see* Tr. 550-51, 647-48). Although Dr. Christensen listed Ms. Box's diagnoses and treatment history, he did not tie his opinion to the evidence (*see* Tr. 550-51). Dr. Nielson provided even less analysis, as he simply transcribed Ms. Box's subjective complaints and recorded his examination findings (*see* Tr. 647-48). While one can sometimes glean the basis for an opinion from the physician's notes, Dr. Nielson's examination findings did not correlate to his opinion. He opined that Ms. Box could lift no more than 10 pounds, but he recorded normal upper extremity strength (Tr. 647-48). He opined that Ms. Box could stand no more than 15 minutes and walk no more than 10 minutes, but he recorded only a "[s]light" limp and full lower extremity strength (Tr. 647-48). These findings reasonably gave the ALJ pause regarding Dr. Nielson's extreme opinion. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination a legitimate factor for rejecting that opinion).

The ALJ also reasonably rejected Dr. Christensen's opinion to the extent that it infringed on an issue reserved to the Commissioner (Tr. 23). Dr. Christensen opined that Ms. Box was "incapable of performing [her] regular work" and was permanently disabled (Tr. 551). An opinion that a disability claimant is "disabled" or "unable to work" addresses the ultimate question of disability, which is an issue reserved to the Commissioner—such opinions are never

entitled to any special significance. 20 C.F.R. § 404.1527(d)(1)-(3); *see Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (treating physician's statement that he did not know if the clamant would ever be able to return to work was "not a true medical opinion," where it did not contain the doctor's judgment about the nature and severity of the claimant's physical limitations or any information about what activities the claimant could still perform, and instead merely addressed an issue reserved to the Commissioner).

Also weighing against the opinions of Drs. Christensen and Nielson was their lack of demonstrated knowledge of Social Security's rules and regulations (Tr. 23). Ms. Box is correct that "[t]here is not any requirement that a physician must have knowledge of Social Security rules and regulations to provide an opinion as to functional limitations" (Pl. Br. 10). However, a factor relevant to the weight due a medical opinion under the governing regulation is "the amount of understanding of [Social Security] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding." 20 C.F.R. § 404.1527(c)(6).

Whereas State agency medical consultants Drs. Stevens and Barton were "highly qualified and experts in Social Security disability evaluation," 20 C.F.R. § 404.1513a(b)(1), neither Dr. Christensen's nor Dr. Nielson's treatment notes or opinions demonstrated a similar familiarity with Social Security disability rules, definitions, or requirements. For example, Dr. Christensen's opinion that Ms. Box was permanently disabled is not tied to requirements of the Act or agency regulations for disability (*see* Tr. 550-51). Likewise, Dr. Nielson's opinion of Ms. Box's "max" lifting, sitting, standing, and walking restrictions is not tied to an eight-hour workday, which is relevant to the evaluation of a disability claimant's RFC (*see* Tr. 648). *See* SSR 96-8p, 1996 WL 374184, at *1 ("Ordinarily, RFC is an assessment of an individual's ability

to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

The ALJ also gave little weight to the opinions of Drs. Christensen and Nielson because they did "not evidence consideration of [Ms. Box's] whole medical evidence of record" (Tr. 23). A factor relevant to the weight due a medical opinion is whether the opining source has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." 20 C.F.R. 404.1527(c)(3). Mr. Christensen had treated Ms. Box only three or four months when he rendered his opinion (*see* Tr. 575 (initial examination in Dec. 2016), 550-51 (opinion in Mar. 2017)). And there is no suggestion that he reviewed her medical records or otherwise obtained a longitudinal picture of Ms. Box's impairments before he rendered his opinion (*see* Tr. 575-83, 564-68, 560-62, 556-59, 545-49, 550-51). Instead, it appears that Dr. Christensen relied in large part on Ms. Box's self-reported symptoms and history (*see* Tr. 575 ("The patient reports . . . The patient reports . . . ."), 577 ("The patient reports . . . The Patient reports . . . Patient reports . . . The patient reports . . . The patient reports . . . ."), 550 ("43 yo female with 6 years of neck pain, back pain limiting function.")). But the ALJ found that her reported symptoms were inconsistent with other evidence (Tr. 21). Ms. Box does not challenge that finding here. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (waiver).

Dr. Nielson had treated Ms. Box for longer than Mr. Christensen when he rendered his opinion, a fact that could have entitled it to more weight. Yet his opinion likewise did not evidence consideration of Ms. Box's longitudinal medical record (*see* Tr. 647-48). A factor

relevant to the weight due a medical opinion is "the degree to which the[] medical opinions consider all of the pertinent evidence in [a] claim." 20 C.F.R. 404.1527(c)(3). Dr. Nielson, like Dr. Box, appears to have premised his opinion in large part on Ms. Box's self-reported history and symptoms rather than the longitudinal medical record. He referenced an onset of symptoms at age 16 and diagnosis of fibromyalgia at age 35, but he did not start treating her until she was in her 40s (*see* Tr. 647). Dr. Nielson listed Ms. Box's "subjective complaints" as: "Not having the grip strength to hold objects, which occasionally fall. Pain in multiple joints including the right shoulder. Numbness in the right hand, leg. Low back pain, right hip pain, myofascial tenderness and pain" (Tr. 647). These subjective complaints then appeared as functional limitations within Dr. Nielson's opinion (*see* Tr. 648).

Relatedly, the ALJ reasonably concluded that the extremely limiting opinions from Drs. Christensen and Nielson were inconsistent with objective medical evidence (Tr. 24). *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ."). The ALJ highlighted the "largely benign imaging of [Ms. Box's] spine and extremities" (Tr. 24 (citing Tr. 325-33, 386-88, 620)). In contrast to the treating physicians' extremely limiting opinions, these studies showed:

- A "small tear" in the labrum of Ms. Box's right shoulder with no evidence of impingement or a rotator cuff tear (Tr. 325);
- A "moderate size" tear in Ms. Box's right knee medial meniscus (Tr. 326);
- A "moderate size" tear in Ms. Box's left knee medial meniscus (Tr. 328);

- Moderate narrowing of the spinal canal in the neck with mild to moderate narrowing of the nerve root openings (Tr. 332-33);

- Normal sensation with no evidence of nerve damage (radiculopathy) in Ms. Box's right upper extremity (Tr. 386-88); and

- "Minimal degenerative changes" in Ms. Box's right shoulder (Tr. 620).

The ALJ reasonably found that, while these objective studies supported a limitation to sedentary work—the least-demanding level of work, *see* 20 C.F.R. 404.1567(a)—they did not support the opinion of Dr. Christensen that Ms. Box was permanently disabled or the opinion of Dr. Nielson that Ms. Box could lift no more than 10 pounds, sit no more than 20 minutes, stand no more than 15 minutes, walk no more than 10 minutes, or bend no more than four times per day (Tr. 23-24).

Reasonable people could disagree about whether substantial evidence supported the ALJ's conclusion that the opinions of Drs. Christensen and Nielson were inconsistent with other evidence. But "[a] finding of 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (further citations omitted)). As such, the ALJ's reasonable conclusion that the evidence was inconsistent with these opinions must stand. *See Biestek*, 139 S. Ct. at 1154 (2019) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (internal citation omitted)).

### 2. The ALJ reasonably evaluated Ms. Box's mental limitations

Ms. Box argues that the ALJ was required to consider the side effects of her medication when evaluating her mental limitations (Pl. Br. 14). It is correct that an ALJ must consider a

claimant's medication side effects when evaluating whether her reported symptoms are inconsistent with other evidence. 20 C.F.R. § 404.1529(c)(3)(iv). There is, however, a "difference between what an ALJ must consider as opposed to what he must explain in the decision." *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012) (unpublished).

Moreover, Ms. Box very rarely reported any medication side effects. While she told the agency that her medications caused extreme drowsiness and fatigue (Tr. 210, 236), she told pain management specialist Dr. Kumar that she did not experience *any* medication side effects (Tr. 399 ("No side effects of pain medications."), 397 (same), 395 (same), 393 (same), 391 (same)). After moving to Utah, Ms. Box told Dr. Nielson that she had experienced memory issues on one occasion, but Dr. Nielson attributed that episode "to the stress she was going through," not a medication side effect (Tr. 460). Ms. Box only rarely told Dr. Christensen that she experienced medication side effects, and then sometimes reported that the fatigue was "manageable" (*see* Tr. 527, 746 (only side effect was constipation), 740, 731, 676 (only side effect was dry mouth)). At the vast majority of her visits, she reported no adverse reactions to her prescribed medications (*see* Tr. 564, 556, 545, 535, 521, 751, 736, 725, 719, 714, 708, 697, 691, 685, 670). And she told her physical therapists that she had "used Percocet and morphine for a long time and ha[d] no problems with them" (Tr. 467).

An ALJ need only discuss the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). The ALJ was, therefore, not required to discuss the medication side effects that Ms. Box only rarely reported— those reports were neither uncontroverted nor significantly probative. The ALJ was certainly not

required to include mental limitations in Ms. Box's RFC to account for these unsupported claims of medication side effects.  *Cf. Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record.").

Ms. Box's argument is inconsistent with not only her own reports that she did not experience medication side effects, but also with her own report that she had no problem with concentration or memory (Tr. 234).  Her argument is further inconsistent with her providers' consistent observations of normal attention, concentration, and memory.  As the ALJ discussed in relation to his evaluation of the opinions as to Ms. Box's mental abilities, mental status examination findings were generally benign (Tr. 23).  Even when Ms. Box was hospitalized for anxiety in 2017, she demonstrated intact recent and remote memory, logical and goal-directed thought process, and grossly intact attention (Tr. 623).  Thereafter, Ms. Box's therapist, Mr. Dalley, recorded normal mental status findings at every visit, including good attention, logical and organized thought process, normal cognition, normal concentrating ability, and intact memory (Tr. 609, 595, 597, 599, 601, 603).

If, as Ms. Box claimed, her medications significantly limited her ability to attend, concentrate, focus, pay attention, or remember, one would expect her to report such severe issues to her doctors (who would presumably adjust her medications).  She did not.  If Ms. Box's side effects limited her as she now claims, one would expect to examinations to document reduced memory, concentration, or attention.  They did not.  The record does not support Ms. Box's claim of error.

**B. The ALJ reasonably relied on the vocational expert's testimony at step four to find that Ms. Box could do her past relevant work**

At step four, Ms. Box bore the burden to prove that she could not do her past relevant work either as she actually performed it or as it was generally performed in the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). The Tenth Circuit has described step four as consisting of three phases: (1) assessing the claimant's RFC; (2) determining the physical and mental demands of the claimant's prior occupations; and (3) assessing the claimant's ability to return to the past occupations given her RFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). At phase one, the ALJ reasonably assessed Ms. Box's RFC, as discussed above.

At the administrative hearing, the ALJ asked a vocational expert about the physical and mental demands of Plaintiff's prior work (Tr. 44). The expert testified that, based on her review of the evidence, Plaintiff had past relevant work as (1) office manager, described in the Dictionary of Occupational Titles (DOT) at entry 169.167-034 as a sedentary, skilled occupation with a specific vocational preparation (SVP) level of 7; and (2) purchase agent, described in the DOT at entry 162.157-038 as a light, skilled occupation with an SVP level of 7 (Tr. 44).

The ALJ then asked the vocational expert about a hypothetical individual with limitations the ALJ ultimately found coincided with Ms. Box's RFC (*compare* Tr. 44 *with* Tr. 21). The expert testified that an individual with these limitations could do Ms. Box's past relevant work as an office manager, both as that occupation is described in the DOT (as generally performed) and

as Ms. Box did it (as actually performed) (Tr. 44-45). The expert testified that her testimony was consistent with the DOT (Tr. 45).

Ms. Box argues that the record was "devoid of any evidence regarding the mental demands" of her past relevant work, similar to *Dorman v. Astrue*, 368 F. App'x 864 (10th Cir. 2010) (unpublished) (Pl. Br. 15). But, in *Dorman*, there was no evidence regarding the mental demands of the claimant's past relevant work. *Id*. at 865-66. And here, in contrast, the vocational expert testified that the office manager job was skilled, with an SVP of 7 (Tr. 44).

The Tenth Circuit in *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (unpublished), addressed a similar question. The plaintiff there alleged that the ALJ failed "to make a specific finding about the mental demands of the dishwashing job or inquire of the vocational expert about those demands . . . ." *Id*. The court disagreed. *Id*. In *Zaricor-Ritchie*, as here, the vocational expert testified to the skill level of the plaintiff's past relevant work. *Id*. The court found that, with this testimony, "the ALJ had sufficient information regarding the mental demands of [the plaintiff's] dishwashing job relevant to the mental limitations in her RFC . . . ." *Id*.

More recently, the Tenth Circuit rejected a step-four argument that the ALJ "fail[ed] to make the requisite findings at each phase" as "meritless." *Adcock v. Comm'r*, 748 F. App'x 842, 847 (10th Cir. 2018) (unpublished). The court in *Adcock* reiterated what the Tenth Circuit has repeatedly held: an ALJ may cite with approval a vocational expert's testimony concerning the demands of the claimant's past relevant and may rely on that expert's testimony to find that the claimant's RFC is consistent with that past relevant work. *Id*. at 848 (citing *Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003) (holding that ALJ did not improperly delegate his step

four duties to the vocational expert (VE) where "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis")).

The ALJ here, like the ALJs in *Zaricor-Ritchie*, *Adcock*, and *Doyal*, could rely on the vocational expert's testimony to find that Ms. Box's RFC would allow her to perform her past relevant work as an office manager (Tr. 24-25). There was no error in the ALJ's step four findings.

## IV. CONCLUSION

For the reasons discussed above, the Court AFFIRMS the Commissioner's decision denying Ms. Box's claim for disability benefits.

Dated this 29th day of January, 2021.

_____
PAUL KOHLER
United States Magistrate Judge